

Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | P. Michael Mahoney | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 50250 | **DATE** | 6/24/2002 |
| **CASE TITLE** | WALKER vs. BARNHART | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]   In accordance with the attached order, Plaintiff's motion for summary judgment is denied. Defendant's motion for summary judgment is hereby granted. Enter attached Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | Document Number |
|---|---|---|---|
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | JUN 25 2002 | 17 |
| | Notified counsel by telephone. | date docketed | |
| | Docketing to mail notices. | docketing deputy initials | |
| | Mail AO 450 form. | 6/24/2002 | |
| | Copy to judge/magistrate judge. | date mailed notice | |
| tml | courtroom deputy's initials | 02 JUN 24 PM 4:03 FILED-WD Date/time received in central Clerk's Office | gg mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| ELLEN D. WALKER, ) | |
| ) | |
| Plaintiff, ) | Case No. 01 C 50250 |
| ) | |
| v. ) | |
| ) | P. Michael Mahoney |
| JO ANNE B. BARNHART, ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |

### MEMORANDUM OPINION AND ORDER

Plaintiff, (Plaintiff), seeks judicial review of the final decision of the Commissioner of the Social Security Administration (Commissioner). See 42 U.S.C. §§ 405(g), 1383(c)(3). The Commissioner's final decision denied Plaintiff's application for Disability Insurance Benefits (DIB) pursuant to Title XVI of the Social Security Act (the Act). 42 U.S.C. §1381(a). This matter is before the Magistrate Judge pursuant to consents filed by both parties on October 19, 2001. See 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.

I.  BACKGROUND

Plaintiff filed for DIB on February 26, 1998, alleging disability beginning on October 31, 1997. (Tr. 42-44). Plaintiff's application for benefits was denied on June 11, 1998. (Tr. 20-23). On July 9, 1998, Plaintiff filed a request for reconsideration. (Tr. 24). Plaintiff's request for reconsideration was denied on October 27, 1998. (Tr. 25-27). Plaintiff then filed a request for a hearing before an Administrative Law Judge (ALJ) on November 25, 1998. (Tr. 28). Plaintiff appeared, with counsel, before an ALJ on May 13, 1998. (Tr. 235-269). In a decision dated

September 23, 1999, the ALJ found that Plaintiff was not entitled to DIB. (Tr. 8-17). On September 28, 1999, Plaintiff requested a review of the ALJ's decision by the Appeals Council. (Tr. 7). On June 20, 2001, the Appeals Council denied Plaintiff's request for review. (Tr. 5-6).

## II. FACTS

Plaintiff was born on October 11, 1954, and was 44 years old at the time of the hearing. (Tr. 238). Plaintiff resides in Rockford, Illinois, with her husband and two teenaged sons. (Tr. 237-238). Plaintiff stated that she completed school through the ninth grade and obtained a GED in 1992. (Tr. 238-239). Prior to her alleged disability, Plaintiff worked at Warner Lambert for 13 to 14 years. (Tr. 239). Plaintiff testified that she is currently receiving long term disability benefits as a result of her being injured while working at Warner Lambert. (Tr. 240). Plaintiff was initially injured in 1995 and returned to light duty work. (Tr. 241). Plaintiff worked in an office doing paperwork and was limited to lifting no more than five pounds and was not to do any bending or stooping. (Tr. 241). After a year, Plaintiff was transferred to a factory position that did not involve heavy lifting and allowed Plaintiff the option of sitting or standing for the majority of the time. (Tr. 244-245). After six months, Plaintiff's doctor release her to work providing that she could lift only 15 to 20 pounds, could not bend, stoop, or twist, and should not do a lot of standing. (Tr. 246). Plaintiff testified that she was injured again in October of 1996, while stacking boxes on the conveyor belt. (Tr. 248-249). Plaintiff was off work for a month and a half and returned to work until March 1997, in a position that involved sitting and removing scraps of paper from the line. (Tr. 249-250). Plaintiff was injured again when her chair broke. (Tr. 250). Plaintiff stated that Dr. Christine Petty has been her treating physician since she was injured and that she last visited Dr. Petty in December 1998. (Tr. 251). Subsequently, Plaintiff has been treated by Dr. Soufan. (Tr. 251). Plaintiff's most recent

2

appointment with Dr. Soufan was on May 4, 1999. (Tr. 252). Plaintiff testified that she is currently taking Flexeril, Hypertec, and Wellbutrin. (Tr. 252). In response to questions from her attorney, Plaintiff testified that after her last injury she was given a release to work from Dr. Petty that limited her to lifting no more than five pounds, no bending, stooping or twisting, and provided that Plaintiff must be able to alternate between sitting and standing. (Tr. 254-255). Plaintiff testified that she had had some physical therapy and one epidural block that did not help at all. (Tr. 256). Plaintiff stated that she experienced pain in her neck and shoulder, primarily on the right side, and experiences significant back pain that worsens with activity. (Tr. 256-257). Plaintiff asserted that she is unable to walk, sit, or stand for very long and is unable to do strenuous activity. (Tr. 257-258). Plaintiff testified that she had undergone some tests, that one of those tests was positive, and that she had been told by her doctor that she may have fibromyalgia. (Tr. 258). Plaintiff testified that she has severe headaches once a week and had been taking Imitrex for migraine headaches, but that she has recently been switched to Maxalt and is also currently taking Wellbutrin for depression. (Tr. 260). Plaintiff reported that she is depressed several days each week, that she cries a lot, and that she does not socialize or go out much. (Tr. 263-265).

### III. MEDICAL HISTORY

Treatment notes from the Riverside Medical Clinic indicate that Plaintiff was injured in her job at Warner Lambert on January 6, 1995. (Tr. 79-112). X-rays taken January 6, 1995, indicate very mild degenerative disc disease at L4-5 and no evidence of fracture, spondylolysis, or spondylolisthesis. (Tr. 112). The notes indicate that Plaintiff reported she had fallen from her stool and had pain in her left lower back and buttocks and the diagnosis was reported as a lumbar strain and hip contusion. (Tr. 111). Treatment notes from January 10, 1995, through May 26, 1995,

3

indicate that Plaintiff's back pain was slowly improving with therapy and medication. (Tr. 98-110). On May 26, 1995, Plaintiff's treating physician indicated that Plaintiff had a full range of motion (ROM) in her back and was no longer taking medication. (Tr. 98). Plaintiff submitted treatment records from Dr. James Dougherty, an orthopedic surgeon, for the time period of April 14, 1996, through June 2, 1997. (Tr. 115-121). Dr. Dougherty reported that Plaintiff was referred to him to address her continued low back and hip pain from January 6, 1995. (Tr. 122). Dr. Dougherty indicated that he had reviewed a recent MRI of Plaintiff's lumbar spine and that the scan demonstrated no evidence of herniation or acute abnormalities and appeared normal for Plaintiff's age. (Tr. 122). Dr. Dougherty reported that Plaintiff's symptoms are localized to the paravertebral lumbar musculature of the left side and over the left sacroiliac joint with increased pain on coughing and sneezing. (Tr. 122). Dr. Dougherty's exam revealed normal heel and toe walking, forward bending limited to thirty degrees, lateral bending limited to thirty degrees, no palpable lumbar spasm, and some tenderness in the left lumbar and sacroiliac regions. (Tr. 122). Plaintiff's knee and ankle jerks were 2+ bilaterally, straight leg raising was possible to eighty degrees bilaterally, full ROM in the hips was noted, and some diminished sensation was noted at the left lower calf. (Tr. 122). Dr. Dougherty stated that Plaintiff suffered from a recurrent lumbar strain and that there was no evidence of herniation. (Tr. 122). Dr. Dougherty advised Plaintiff that he could not take her off work completely, but that she should continue with her current restrictions of no bending, lifting, or twisting. (Tr. 122). On July 1, 1996, Dr. Dougherty indicated that Plaintiff reported 96% relief of her original symptoms, she was released to full activity, and instructed to return on an as needed basis. (Tr. 120). Dr. Dougherty's notes from October 31, 1996, indicate that Plaintiff experienced a sharp back pain on October 22, 1996, while lifting boxes at work. (Tr. 118). Examination of

4

Plaintiff revealed diminished lateral bending, tenderness and low grade spasm in the left paravertebral lumbar musculature, left straight leg raising to forty degrees with a positive Lasegue sign, right straight leg raising to seventy degrees with a negative Lasegue sign, full ROM in both hips, and intact sensory exam with subjective hypethesia to the medial aspect of the foot. (Tr. 118). Dr. Dougherty noted that an X-ray of the lumbar spine showed minimal spurring at L4-5. (Tr. 118). An MRI scan of Plaintiff's lumbar spine taken November 14, 1996, indicated minimal discogenic change at L2-3 and L3-4 with no other significant abnormalities, herniation, or compromise of the spinal canal or neural foramen. (Tr. 117). On November 21, 1996, Plaintiff reported to Dr. Dougherty that she was feeling a little better, she appeared to be more flexible in the lumbar spine, heel and toe walking was normal, and bilateral leg raising was possible to ninety degrees. (Tr. 116). Dr. Dougherty noted that he is unable to define any significant ongoing orthopedic pathology which would prevent Plaintiff from returning to work and fitted her with a DuPuy power belt to be worn as needed. (Tr. 115). Dr. Dougherty also reported that Plaintiff had received the maximum benefit from physical therapy and was instructed to continue her home exercises. (Tr. 115).

Treatment notes from Plaintiff's physician, Dr. Christine Petty, MD, indicate that Plaintiff was seen for neckaches, headaches, low back pain, weakness and dizziness from February 24, 1996, through June 26, 1998. (Tr. 149-178). Dr. Petty noted that Plaintiff suffers chronic low back pain with spasm since 1996. (Tr. 149-178). Further, Plaintiff suffers from migraine headaches and neck pain with spasm. (Tr. 149-178). Cervical X-rays taken February 28, 1998, indicate mild degenerative changes in the mid-cervical spine with no significant bony impingement on the neural foramina. (Tr. 151).

Cervical X-rays from March 3, 1998, demonstrated mild disc narrowing at C3-4, C4-5, and

C5-6 and some small marginal osteophytes. (Tr. 132). On March 11, 1998, Plaintiff underwent a lumbar epidural steroid injection. (Tr. 129).

On May 6, 1998, Plaintiff was seen by Dr. Kamlesh Ramchandani, MD, for a disability evaluation. (Tr. 133-137). Dr. Ramchandani indicated that Plaintiff complained of headaches, lasting for three to four days with nausea, vomiting, dizziness, and photophobia, neckaches, and backaches. (Tr. 133). Plaintiff reported that her back pain is constant and increases with bending, standing for ten minutes, sitting for 25 to 30 minutes, walking two blocks, or lifting five pounds. (Tr. 133). Plaintiff's current medications were Naprosyn, Imitrex, Darvocet, and Amitryptiline. (Tr. 133). Dr. Ramchandani reported that Plaintiff has a normal, unassisted gait, is able to squat slowly and get up from a squatting position with assistance, is able to get on and off the exam table without assistance, is able to dress and undress herself without assistance, and has normal grip strength bilaterally. (Tr. 134). Dr. Ramchandani's examination revealed no evidence of soft tissue swelling or inflammation of Plaintiff's lumbar or cervical spine. (Tr. 134). In his report, Dr. Ramchandani stated his impression as osteoarthritis of the cervical and lumbar spine, migraine headaches, and hypertension. (Tr. 134). Dr. Ramchandani completed a ROM questionnaire with regards to Plaintiff and noted she had normal strength and ROM in her upper extremities. (Tr. 135). As to her lower extremities, Dr. Ramchandani noted that Plaintiff had limited ROM in her cervical and lumbar spine and normal strength in her lower extremities. (Tr. 136). A May 13, 1998, X-ray of Plaintiff's lumbar spine indicated mild spurring and an otherwise normal lumbar spine. (Tr. 137).

On May 29, 1998, Dr. George Andrews, MD, completed a residual functional capacity (RFC) assessment form for the Bureau of Disability Determination Services. (Tr. 138-145). Dr. Andrews determined that Plaintiff is capable of lifting fifty pounds occasionally, twenty-five pounds

frequently, and standing, walking, or sitting for six hours in an eight hour work day. (Tr. 139). Dr. Andrews noted that Plaintiff is capable of climbing stairs occasionally but cannot climb ladders ropes or scaffolds, and has not manipulative, visual, communicative, or environmental limitations. (Tr. 140-142).

An additional RFC assessment was completed as to Plaintiff by Dr. Victoria Dow, MD, on October 13, 1998. (Tr. 194-201). Dr. Dow indicated that Plaintiff has a history of complaints of back pain, however, MRI testing has demonstrated only mild arthritic changes and some spurring. (Tr. 195). Dr. Dow fund that Plaintiff retains the capacity to lift fifty pounds occasionally and twenty-five pounds frequently, to sit, stand, or walk for six hours in an eight hour work day, and is limited to never climbing, and has no manipulative, visual,, communicative, or environmental limitations. (Tr. 195-198).

Plaintiff's most recent treatment records, from February through may of 1999, are from Dr. Bassam Soufan, MD. (Tr. 203-217). On February 25, 1999, Dr. Soufan noted that Plaintiff was a new patient and on examination found increased spasm of the whole lumbar spine and tenderness at the paralumbar spine. (Tr. 203). Plaintiff was unable to bend more than 15 degrees and the straight leg raising test was normal bilaterally. (Tr. 203). Plaintiff was referred to a chiropractor and given prescriptions for Flexiril and Wygraine tablets. (Tr. 203). Dr. Soufan indicated that Plaintiff suffered from chronic back pain that had worsened, probably muscular and that fibromyalgia should be ruled out. (Tr. 203). Plaintiff was seen by Dr. Soufan on March 25, 1999, and reported that her back pain had worsened and she had obtained no relief from her visits to the chiropractor. (Tr. 205). Dr. Soufan indicated that rheumatoid arthritis, ankylosing spondylitis, and fibromyalgia should be ruled out and prescribed Celebrex to Plaintiff. (Tr. 205). On April 5, 1999, Dr. Soufan indicated that

7

Plaintiff continued to complain of back pain and that her blood tests showed mild anemia, her rheumatoid factor was negative, her ESR was high, and her ANA screen was positive at 1/160 speckled pattern. (Tr. 207). Dr. Soufan noted that Plaintiff may benefit from seeing a rheumatologist and prescribed Arthrotec. (Tr. 207). Plaintiff saw Dr. Soufan on May 4, 1999, and stated that she was feeling better, but that the Arthrotec upset her stomach. (Tr. 209).

**Mental health history**

Plaintiff was seen by Dr. Gerald Hoffman, MD, a psychiatrist, on September 9, 1998, for the Bureau of Disability Determination Services. (Tr. 179-181). Dr. Hoffman noted that Plaintiff walked with a painful gait, made poor eye contact, was wearing a neck collar as a result of a whiplash injury from a recent automobile accident, and was a poor historian. (Tr. 179). Dr. Hoffman indicated that Plaintiff presented with rather exaggerated symptoms of pain and was passive and depressed. (Tr. 179). Dr. Hoffman indicated that Plaintiff reported receiving no relief from the epidural block, stating that the pain worsened after the procedure, and he noted that as a paradoxical response. (Tr. 179). Plaintiff reported feeling depressed due to her inability to return to work. (Tr. 179). Dr. Hoffman noted Plaintiff was not spontaneous and was vague and slow in responding with a blunted affect. (Tr. 180). Plaintiff reported that she has trouble staying asleep, lacks energy and interests, has a good appetite, and is not suicidal. (Tr. 180). Dr. Hoffman noted no perceptual distortions, delusions, ideas of reference, or thought broadcast or withdrawal. (Tr. 180). Plaintiff was noted to be oriented, had intact judgment and concentration, had an intact fund of knowledge, and experienced difficulty with memory and concentration. (Tr. 180). Plaintiff reported that she doesn't cook, clean, do the laundry, or do the shopping. (Tr. 180). Plaintiff stated she seldom reads, she watches TV for three hours each day, she drives occasionally, goes to church weekly, and mostly just

"sits". (Tr. 180). Dr. Hoffman indicated that Plaintiff suffers from a mood disorder with depressed features. (Tr. 180).

> "Mood disorder with depressed features: Due to musculoskeletal condition. Her mood has worsened over the course of her leave. There has been no improvement. These symptoms have been exacerbated by recent injury to her neck in the car accident. Because of that, there is currently some element of acute distress making it hard to evaluate with certainty her primary problems. There does appear to be an inter-relationship between her mood and physical symptoms." (Tr. 180).

On October 5, 1998, Dr. Donald MacLean, PhD, completed a Psychiatric Review Technique Form (PRTF) as to Plaintiff. (Tr. 182-190). Dr. MacLean indicated that Plaintiff suffers from an affective disorder characterized by a disturbance in mood evidenced by a depressive syndrome. (Tr. 185). In rating the severity of Plaintiff's impairment, Dr. MacLean reported that Plaintiff suffers slight limitations in her activities of daily living and seldom experiences deficiencies of concentration, persistence, and pace. (Tr. 189). In completing a mental RFC assessment form, Dr. MacLean indicated that Plaintiff is moderately limited in her ability to understand, remember, and carry out detailed instructions, in her ability to maintain attention and concentration for extended periods, in her ability to complete a normal workday and week without interruptions and to perform at a consistent pace without an unreasonable number and length of rest periods, in her ability to interact appropriately with the public, and in her ability to respond appropriately to changes in the work setting. (Tr. 191-192). Dr. MacLean stated that Plaintiff has a mood disorder secondary to pain and is able to understand, remember, and carry out simple tasks, can make simple work related decisions, can get along with others, and can cope with changes in simple work situations. (Tr. 193).

### IV. **STANDARD OF REVIEW**

The court may affirm, modify, or reverse the ALJ's decision outright, or remand the

9

proceeding for rehearing or hearing of additional evidence. 42 U.S.C. § 405(g). Review by the court, however is not *de novo*; the court "may not decide the facts anew, reweigh the evidence or substitute its own judgment for that of the ALJ." *Meredith v. Bowen*, 833 F.2d 650, 653 (7th Cir. 1987) (citation omitted); *see also Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986). The duties to weigh the evidence, resolve material conflicts, make independent findings of fact, and decide the case accordingly are entrusted to the commissioner; "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Commissioner (or the Commissioner's delegate the ALJ)." *Richardson v. Perales*, 402 U.S. 389, 399-400 (1971), *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987). If the Commissioner's decision is supported by substantial evidence, it is conclusive and this court must affirm. 42 U.S.C. § 405(g); *see also Arbogast v. Bowen*, 860 F.2d 1400, 1403 (7th Cir. 1988). "Substantial evidence" is "such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401.

The Seventh Circuit demands even greater deference to the ALJ's evidentiary determinations. So long as the ALJ "minimally articulate[s] his reasons for crediting or rejecting evidence of disability," the determination must stand on review. *Scivally v. Sullivan*, 966 F.2d 1070, 1076 (7th Cir. 1992). Minimal articulation means that an ALJ must provide an opinion that enables a reviewing court to trace the path of his reasoning. *Walker v. Bowen*, 834 F.2d 635, 643 (7th Cir. 1987), *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985). Where a witness credibility determination is based upon the ALJ's subjective observation of the witness, the determination may only be disturbed if it is "patently wrong" or if it finds no support in the record. *Kelley v. Sullivan*, 890 F.2d 961, 965 (7th cir. 1989), *Stuckey v. Sullivan*, 881 F.2d 506, 509 (7th Cir. 1989). "However,

10

when such determinations rest on objective factors of fundamental implausibilities rather than subjective considerations, [reviewing] courts have greater freedom to review the ALJ decision." *Herron v. Shalala*, 19 F.3d 329, 335 (7th Cir. 1994), *Yousif v. Chater*, 901 F.Supp. 1377, 1384 (N.D.Ill. 1995).

V. **FRAMEWORK FOR DECISION**

The ALJ concluded that Plaintiff did not meet the Act's definition of "disabled," and accordingly denied her application for benefits. "Disabled" is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382(c)(3)(A). A physical or mental impairment is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382(c)(3)(C). *See Clark v. Sullivan*, 891 F.2d 175, 177 (7th Cir. 1988).

The Commissioner proceeds through as many as five steps in determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f) (1998).[1] The Commissioner sequentially determines the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant suffers from a severe impairment; (3) whether the impairment meets or is medically equivalent to an impairment in the Commissioner's Listing of Impairments; (4) whether the claimant is capable of performing work which the claimant performed in the past;

---

[1]The Commissioner has promulgated parallel regulations governing disability determinations under Title II and Title XVI. See 20 C.F.R. Ch. III, Parts 404, 416. For syntactic simplicity, future references to Part 416 of the regulations will be omitted where they are identical to Part 404.

and (5) whether the claimant is capable of performing any other work in the national economy.

At Step One, the Commissioner determines whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520 (a),(b). Substantial gainful activity is work that involves doing significant and productive physical or mental duties that are done, or intended to be done, for pay or profit. 20 C.F.R. § 404.1510. If the claimant is engaged in substantial gainful activity, he is found not disabled, regardless of medical condition, age, education, or work experience, and the inquiry ends; if not, the inquiry proceeds to Step Two.

Step Two requires a determination whether the claimant is suffering from a severe impairment.[2] A severe impairment is one which significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). The claimant's age, education, and work experience are not considered in making a Step Two severity determination. 20 C.F.R. § 404.1520(c). If the claimant suffers from severe impairment, then the inquiry moves on to Step Three; if not, then the claimant is found to be not disabled, and the inquiry ends.

At Step Three, the claimant's impairment is compared to those listed in 20 C.F.R. Ch. III, Part 404, Subpart P, Appendix 1. The listings describe, for each of the major body systems, impairments which are considered severe enough *per se* to prevent a person from doing any significant gainful activity. 20 C.F.R. §§ 404.1525(a). The listings streamline the decision process by identifying certain disabled claimants without need to continue the inquiry. *Bowen v. New York*, 476 U.S. 467 (1986). Accordingly, if the claimant's impairment meets or is medically equivalent

---

[2]The claimant need not specify a single disabling impairment, as the Commissioner will consider the combined affect of multiple impairments. See, e.g., 20 C.F.R. § 404.1520(c). For syntactic simplicity, however, this generic discussion of the Commissioner's decision-making process will use the singular "impairment" to include both singular and multiple impairments.

to one in the listings, then the claimant is found to be disabled, and the inquiry ends; if not, the inquiry moves on to Step Four.

At Step Four, the Commissioner determines whether the claimant's residual functional capacity allows the claimant to return to past relevant work. Residual functional capacity is a measure of the abilities which the claimant retains despite his impairment. 20 C.F.R. § 404.1545(a). Although medical opinions bear strongly upon the determination of residual functional capacity, they are not conclusive; the determination is left to the Commissioner, who must resolve any discrepancies in the evidence and base a decision upon the record as a whole. 20 C.F.R. § 404.1527(e)(2); *Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995). Past relevant work is work previously performed by the claimant that constituted substantial gainful activity and satisfied certain durational and recency requirements. 20 C.F.R. § 404.1565; Social Security Ruling 82-62. If the claimant's residual functional capacity allows him to return to past relevant work, then he is found not disabled; if he is not so able, the inquiry proceeds to Step Five.

At Step Five, the Commissioner must establish that the claimant's residual functional capacity allows the claimant to engage in work found in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(f), 404.1566. The Commissioner may carry this burden by relying upon vocational expert testimony, or by showing that a claimant's residual functional capacity, age, education, and work experience coincide exactly with a rule in the Medical-Vocational Guidelines (the "grids"). *See* 20 C.F.R. Ch. III, Part 404 Subpart P, Appendix 2; *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987); Social Security Law and Practice, Volume 3, § 43:1. If the ALJ correctly relies on the grids, vocational expert evidence is unnecessary. *Luna v. Shalala,* 22 F.3d 687, 691-92 (7th Cir. 1994). If the Commissioner establishes that sufficient work exists in the national economy

13

that the claimant is qualified and able to perform, then the claimant will be found not disabled; if not, the claimant will be found to be disabled.

## VI. ANALYSIS

The court will proceed through the five step analysis in order.

A. Step One: Is the claimant currently engaged in substantial gainful activity?

In performing the Step One Analysis the ALJ found that Plaintiff had not engaged in any substantial gainful activity at any time relevant to his decision issued on September 23, 1999. (Tr. 16).

Under ordinary circumstances, a claimant is engaged in substantial gainful activity if the claimant's earnings averaged more than seven hundred and eighty dollars per month for years after January 1, 2001. (20 C.F.R. § 1574 (b) (2) Table 1, as modified by 65 FR 82905, December 29, 2000).

The finding of the ALJ as to Step One of the Analysis is not challenged by either party and the court finds no reason to disturb this finding. The ALJ's determination as to Step One of the Analysis is affirmed.

B. Step Two: Does the claimant suffer from a severe impairment?

In performing the Step Two Analysis the ALJ found Plaintiff suffered from severe impairments. Specifically, the ALJ found Plaintiff has a severe lumbar and cervical strain. (Tr. 16). As to Plaintiff's claimed mental impairment, the ALJ stated "the Judge [ALJ] does not believe there is really any evidence of her [Plaintiff] having any significant mental problem." (Tr. 13). The ALJ noted that the consulting psychiatrist, Dr. Hoffman, accepted Plaintiff's assertions as "gospel" and that Plaintiff has contradicted herself regarding her physical impairments. (Tr. 13). Further, the ALJ

noted that Dr. Hoffman reported that Plaintiff was hard to evaluate. (Tr. 13).

The ALJ's determination that Plaintiff does not suffer from a severe mental impairment is supported by substantial evidence. Plaintiff has provided no evidence that she has received any treatment for a mental disorder. At the hearing, Plaintiff testified that she is not under the care of a psychiatrist or psychologist and that other than her examination by Dr. Hoffman she has not been examined by any psychiatrist or psychologist. (Tr. 261). Plaintiff testified that she was recently given a prescription for Wellbutrin, for depression and pain, from her rheumatologist. (Tr. 261). As Dr. Hoffman indicated, at the time of his exam, Plaintiff had recently been involved in an automobile accident. (Tr. 179). Dr. Hoffman reported that Plaintiff's pain symptoms were exaggerated and that her distress made it difficult to evaluate her psychologically. (Tr. 180). Additionally, the assessments completed by Dr. MacLean were based entirely on the report of Dr. Hoffman. Those assessments are therefore subject to the same doubts cast upon Dr. Hoffman's report and are similarly unsubstantiated by any treatment records. In accordance with the above findings, the ALJ's finding as to Step Two of the Analysis is affirmed.

C. Step Three: Does claimant's impairment meet or medically equivalent to an impairment in the Commissioner's listing of impairments?

In performing the analysis for Step Three the ALJ determined that Plaintiff's impairments do not meet or equal any impairment in Appendix 1 to Subpart P of Regulations number 4. (Tr. 16). The ALJ found that Plaintiff's subjective complaints of pain and alleged limitations are not supported by the objective medical record. (Tr. 16).

Substantial evidence exists to support the ALJ's finding and the court finds no reason to disturb it. Therefore, the ALJ's determination as to Step Three of the Analysis is affirmed.

D.     Step Four: Is the claimant capable of performing work which the claimant performed in the past?

In performing the analysis for Step Four, the ALJ determined that Plaintiff is able to perform her past relevant work. The ALJ determined that Plaintiff has the residual functional capacity to perform work related activities that involve light exertion, do not involve excessive climbing or bending, that do provide a sit/stand option, and do not demand significant lifting. (Tr. 17). The ALJ found that Plaintiff's past work in the office of a gum manufacturer was not precluded by those limitations. (Tr. 17). In support of his determination as to Plaintiff's RFC, the ALJ states that treatment for Plaintiff's lumbar and cervical strains have been conservative in nature. (Tr. 14). The ALJ noted that the objective medical evidence demonstrates only mild degenerative changes in Plaintiff's spine and that while Plaintiff was referred to a rheumatologist, no medical records were provided from a treating rheumatologist contradicting the ALJ's RFC determination. (Tr. 14-15). Further, the ALJ found that Plaintiff's complaints of pain were not entirely credible. Dr. Hoffman noted that Plaintiff's symptoms of pain were exaggerated. (Tr. 179). Also, Plaintiff's complaints of disabling pain are not supported by any objective medical evidence. As noted above, medical tests indicate minimal degenerative changes in Plaintiff's spine. Therefore, the ALJ's determination that Plaintiff's RFC permits her to perform work at the light exertional level with limitations on climbing, bending, and lifting, and that provides a sit/stand option is supported by substantial evidence.

Plaintiff asserts that the ALJ erred in finding that her work in the office at Warner Lambert, after her initial injury, constituted past relevant work. Plaintiff asserts that a job held for a short time within a long term with an employer, that was "basically an accommodation due to worker's

16

compensation or other type of injury" should not be regarded as past relevant work. (Plaintiff's Reply at 3, filed 4/1/2002). This court notes that Plaintiff testified that she performed the office job for a full year and that there is no evidence that the position existed solely as an accommodation to Plaintiff's previous injury. Plaintiff testified that she did office work for about a year that consisted of paperwork, copying, and filing. (Tr. 242-243). Plaintiff cites to Social Security Ruling (SSR) 82-62 in support of her assertion that her office position should not be considered past relevant work. This court has reviewed that ruling and additional case-law and has found no support for Plaintiff's assertion.

This court notes that the ALJ did not demonstrate an analysis of Plaintiff's mental RFC and non-exertional limitations in determining that Plaintiff is capable of performing her past relevant work. Typically, ALJ's are required to incorporate, in the body of the decision, "specific findings as to the degree of limitation in each of the functional areas described in paragraph (c) of this section." 20 C.F.R. §404.1520a(e)(2). In this case, the ALJ found that Plaintiff did not have a severe mental impairment and therefore, did not make findings as to Plaintiff's degree of functional limitations. This court has reviewed the evidence submitted by Plaintiff with regard to her alleged mental impairment and finds little, if any, evidence of functional limitations. As stated by the ALJ, Plaintiff has not sought treatment for her depression and has not been referred for mental health treatment by her treating physicians. Because the ALJ's determination that Plaintiff does not suffer from a severe mental impairment is supported by substantial evidence, the ALJ did not err in failing to address Plaintiff's alleged functional limitations.

Substantial evidence exists to support the ALJ's finding and the court finds no reason to disturb it. Therefore, the ALJ's determination as to Step Four of the Analysis is affirmed.

E.  Step Five: Is the claimant capable of performing any work existing in substantial numbers in the national economy?

The ALJ made no determination at Step Five having found at Step Four that Plaintiff was not eligible for benefits.

## VII.  CONCLUSION

In accordance with the above, Plaintiff's motion for summary judgment is denied. Defendant's motion for summary judgment is granted.

**ENTER:**

_____
**P. MICHAEL MAHONEY, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**

**DATE:** 6/24/02

AO 450(Rev. 5/85)Judgment in a Civil Case

# United States District Court
## Northern District of Illinois
### Western Division

ELLEN D. WALKER          **JUDGMENT IN A CIVIL CASE**

v.          Case Number: 01 C 50250

LARRY MASSANARI

☐    Jury Verdict. This action came before the Court for a trial by jury. The issues have been tried and the jury rendered its verdict.

☐    Decision by Court. This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

IT IS HEREBY ORDERED AND ADJUDGED that defendant's motion for summary judgment is granted. Plaintiff's motion for summary judgment is denied. Judgment is entered in favor of the defendant and against the plaintiff.

Michael W. Dobbins, Clerk of Court

Date: 6/24/2002

Gale L. Graeff, Deputy Clerk